# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

STATE OF WASHINGTON,

Respondent,

v.

RUSSELL ARTHUR MARTIN,

Appellant.

No.  53447-9-II

UNPUBLISHED OPINION

SUTTON, A.C.J. — Russell A. Martin appeals his convictions for two counts of unlawful possession of a controlled substance with intent to deliver and five counts of unlawful possession of a firearm in the second degree, all with aggravating factors.  Russell argues that the trial court erred by denying his CrR 3.6 motion to suppress and his motion to reconsider.  Martin repeats this claim in his statement of additional grounds (SAG).  We hold that the trial court did not err and affirm.

FACTS

I.  BACKGROUND HISTORY

On March 3, 2017, Pierce County Sheriff Deputy R. Vance Tjossem was granted a search warrant for a residence in unincorporated Pierce County.  Deputy Tjossem requested the warrant based on a confidential informant's (CI) observations after he or she conducted two recent controlled buys with Martin at this residence.  The CI informed Deputy Tjossem that while inside

the residence, he or she saw Martin weighing a large amount of heroin with a black handgun next to Martin. The search warrant authorized a search of Martin's residence and his person for controlled substances, weapons, and evidence of a drug distribution operation.

Deputy Tjossem and about one dozen other members of the Special Investigations Unit arrived at the property to execute the search warrant at 5:53 am on March 10, 2017. While other deputies searched the residence, Deputy Tjossem walked the perimeter and noticed a fifth wheeler trailer sitting on the property about 10 to 15 feet from the residence. This trailer was not named in the search warrant.

As he walked between the house and the trailer, Deputy Tjossem "could hear a male and female voice yelling inside the fifth wheel and [he] could hear items banging and things being thrown." Verbatim Report of Proceedings (VRP) (Oct. 23, 2018) at 26. At that time, Deputy Tjossem was alone in the backyard. When a man opened the door of the fifth wheel trailer, Deputy Tjossem ordered "him to go back inside." VRP (Oct. 23, 2018) at 27. Deputy Tjossem then realized that the man was Martin.

Deputy Tjossem was concerned for his safety because he knew there were at least two people inside the trailer, and he knew from the CI that Martin may be armed. Deputy Tjossem later testified that he was "not going to sit there with an unknown number of people inside after hearing what [he] heard. . . . I had the exigency to the warrant requirement to enter the trailer and secure it for a search warrant and take Mr. Martin into custody." VRP (Oct. 23, 2018) at 58. At that point it was unknown "if people are arming themselves, if they are destroying evidence, there [are] so many unknowns and it's a huge officer safety issue." VRP (Oct. 23, 2018) at 29. "[D]rugs and guns go hand in hand. . . . You couldn't leave [the occupants] in there. They could destroy

evidence. They could arm themselves, all of those safety concerns, evidentiary concerns." VRP (Mar. 11, 2019) at 539-40.

Deputy Tjossem then called other officers and requested backup. Shortly thereafter, Sergeant Paul Schneider arrived to provide backup. Deputy Tjossem knocked on the door of the trailer, Martin opened the door and stepped back into the trailer's threshold. Deputy Tjossem was concerned that Martin was advancing toward some type of weapon, so he entered the trailer to take Martin into custody. Deputy Tjossem handcuffed Martin and handed him to Sergeant Schneider who was outside at the base of the stairs to the trailer.

Once Deputy Tjossem was inside the trailer, he noticed a methamphetamine smoking device—a bong—sitting on a table, as well as a video surveillance system that showed the driveway and approach to the residence and trailer. The bong had black and white residue on it consistent with having been used to smoke methamphetamine. Deputy Tjossem also found three other individuals inside the trailer, who were taken into custody.

Deputy Tjossem interviewed Martin, who confirmed that he owned the trailer and he allowed people on the property to use it. Based on his observations of the methamphetamine bong and the surveillance system, Deputy Tjossem applied for and was granted a second search warrant specifically for drugs and firearms inside the trailer.

Upon executing the warrant to search the trailer, officers found over 3.5 pounds of heroin, over $30,000 in cash, numerous scales, multiple cell phones, Ziploc bags, two safes, a ledger with notes and dollar amounts, and five operable firearms. On Martin's person, officers discovered $2,700 in cash in his pocket.

II. PROCEDURAL HISTORY

The State charged Martin with two counts of unlawful possession of a controlled substance with intent to deliver, with aggravating factors that Martin was armed with a firearm when he committed these crimes and that both crimes were major violations of the Uniform Controlled Substances Act,[1] and five counts of unlawful possession of a firearm in the second degree.

Martin moved to suppress the evidence found during the search of the trailer. He argued that exigent circumstances did not exist to justify Deputy Tjossem's entry into the trailer when the search warrant was only for the residence and for himself, and that Deputy Tjossem failed to inform the judge of the CI's multiple convictions for crimes of dishonesty. The trial court held a CrR 3.6 hearing, where Deputy Tjossem and Sergeant Schneider testified. The court also viewed a video of Deputy Tjossem's initial approach and entry into the trailer and another video showing his subsequent entry into the trailer while executing a second search warrant.

The court ruled that Deputy Tjossem had authority by the search warrant to enter the trailer:

> That warrant gave [Deputy Tjossem] the authority to seize [Martin's] person, that's an arrest, and search him, okay. The fact that it didn't say arrest warrant, there is also – it's clear also, and I don't know if you dispute that, that [the deputy] had probable cause even without the warrant to arrest [Martin], because [there is] a reliable informant say[ing] [they] watched [Martin] deal drugs. That amounts to probable cause. And whether he gets a conviction for that, that's not the issue. But [the deputy] did have a warrant to seize the person of [] Martin and search him for drugs, as well as other evidence. That's an arrest.

VRP (Oct. 23, 2018) at 78. The court also ruled that exigent circumstances existed to justify the intrusion "in accordance with the warrant." VRP (Oct. 23, 2018) at 84.

---

[1] Ch. 69.50 RCW.

The court entered written findings of fact and conclusions of law consistent with its oral ruling denying the motion. Finding of fact 11 stated, "The warrant in Exhibit A was also an arrest warrant to seize Mr. Martin and search his person." Clerk's Papers (CP) at 221.

Martin later filed a motion to reopen the previous motion to suppress,[2] arguing that there was new evidence that supported suppression. The court held a hearing where, again, Deputy Tjossem and Sergeant Schneider testified, as did three other police officers. The court orally denied Martin's motion for the same reasons it denied his first motion. The court again entered written findings of fact and conclusions of law consistent with its oral ruling. In denying reconsideration, the court entered finding of fact 4, which stated, "Deputy Tjossem knocked on the trailer door and then entered the trailer to arrest Russell Martin pursuant to the warrant." CP at 227.[3]

Trial began on March 7, 2019. The officers testified consistent with the above stated facts. The jury found Martin guilty of all charges and all aggravating factors. The court sentenced Martin to 262 months in prison and 12 months of community custody.

Martin appeals.

---

[2] The court treated the motion to reopen as a motion to reconsider the court's denial of the motion to suppress.

[3] In his opening brief, Martin's cites and quotes to the record do not match regarding finding of fact 4, but it appears that he means to appeal finding of fact 4 of the undisputed facts.

## ANALYSIS

### I. STANDARD OF REVIEW

We review a trial court's decision on a CrR 3.6 motion to suppress evidence to determine whether substantial evidence support the court's findings of fact and whether those findings support the conclusions of law. *State v. Russell*, 180 Wn.2d 860, 866, 330 P.3d 151 (2014). "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the finding's truth." *State v. Stewart*, 12 Wn. App. 2d 236, 240, 457 P.3d 1213 (2020). Unchallenged findings are verities on appeal. *Stewart*, 12 Wn. App. 2d at 240. We review conclusions of law de novo. *Stewart*, 12 Wn. App. 2d at 240. Similarly, whether exigent circumstances exist is a legal question that we review de novo. *State v. Inman*, 2 Wn. App. 2d 281, 290, 409 P.3d 1138 (2018).

### II. MOTION TO SUPPRESS

Martin argues that the trial court erred by denying his motions to suppress evidence and reconsider because (1) Deputy Tjossem's entry into the trailer was not justified under the warrant which authorized only a search of Martin's residence and person, and (2) Deputy Tjossem's entry into the trailer was not justified by exigent circumstances. We agree that the trial court mistakenly found that the initial search warrant for Martin was an arrest warrant when it authorized only a search of the residence and Martin's person. But we hold that Deputy Tjossem's initial entry into the trailer was justified by exigent circumstances.

Warrantless searches and seizures are per se unreasonable and in violation of the Fourth Amendment and article 1, section 7 of the Washington State Constitution. *State v. Muhammad*, 194 Wn.2d 577, 596, 451 P.3d 1060 (2019) (plurality opinion). A recognized exception to the

warrant requirement allows a warrantless search or seizure when exigent circumstances exist. *Muhammad*, 194 Wn.2d at 596. The State has the burden of showing exigent circumstances by clear and convincing evidence. *State v. Garvin*, 166 Wn.2d 242, 250, 207 P.3d 1266 (2009).

"The warrant requirements must yield when exigent circumstances demand that police act immediately." *Muhammad*, 194 Wn.2d at 597. Exigent circumstances exist where "obtaining a warrant is impractical because delay inherent in securing a warrant would compromise officer safety, facilitate escape, or permit destruction of evidence." *Muhammad*, 194 Wn.2d at 597. A court examines the totality of the circumstances to determine whether exigent circumstances exist. *Muhammad*, 194 Wn.2d at 597.

> Six factors further guide our analysis of whether exigent circumstances exist: (1) the gravity or violent nature of the offense with which the suspect is to be charged, (2) whether the suspect is reasonably believed to be armed, (3) whether there is reasonably trustworthy information that the suspect is guilty, (4) a strong reason to believe the suspect is on the premises, (5) a likelihood that the suspect will escape if not quickly apprehended, and (6) entry is made peaceably. Every factor need not be present, but they must show that officers needed to act quickly.

*Muhammad*, 194 Wn.2d at 597 (internal citation omitted).

"To prove exigent circumstances, the State must 'point to specific, articulable facts and the reasonable inferences therefrom which justify the intrusion.'" *Muhammad*, 194 Wn.2d at 597 (internal quotations omitted) (quoting *State v. Coyle*, 95 Wn.2d 1, 9, 621 P.2d 1256 (1980)). The particularly requirement is met if the officers are "'confronted with some sort of contemporaneous sound or activity alerting them to the possible presence of an exigent circumstance.'" *Muhammad*, 194 Wn.2d at 630 (Gordon McCloud, J., opinion) (internal quotation marks omitted) (quoting *Coyle*, 95 Wn.2d at 10). "Police officers are justified in taking reasonable actions to secure their

safety when entering a premise under exigent circumstances." *State v. Cardenas*, 146 Wn.2d 400, 410, 47 P.3d 127 (2002).

Here, Deputy Tjossem was conducting an investigation of Martin for drug dealing based on reliable information from a CI and believed that Martin had access to firearms. Deputy Tjossem testified that in his experience, firearms are often involved in drug distribution cases, and the CI had informed him that Martin had a firearm.[4] The court found that "[t]here was a valid warrant based on reliable information from a reliable informant that Mr. Martin had drugs present in the house" and that "Mr. Martin was on the premises and [] Deputy [Tjossem] saw him." CP at 222.

Significantly, the trial court found that there were officer safety concerns justifying Deputy Tjossem's need to act quickly. Deputy Tjossem initially approached the trailer because he heard banging and yelling from inside. At that time, he was alone by the trailer. Deputy Tjossem testified that Martin opened the door and looked outside, and that he immediately ordered Martin to go back inside the trailer because Deputy Tjossem believed he was outnumbered and wanted to call for backup.

Deputy Tjossem testified that he had reason to believe the people inside the trailer may be arming themselves or destroying evidence. The court found that "Deputy Tjossem had concerns that Russell Martin[] and the other occupants may have access to firearms and could pose a threat

---

[4] The State also argues that exigent circumstances existed based on possible destruction of evidence. Deputy Tjossem testified that he was concerned that the people inside the trailer were destroying evidence. Therefore, although the trial court did not make specific findings about the destruction of evidence, the evidence would have supported a finding of exigent circumstances on this basis as well. *State v. Streepy*, 199 Wn. App. 487, 500, 400 P.3d 339 (2017) (holding that we can affirm on any grounds supported by the record).

to the officers on the scene due to their ability to suddenly access a weapon." CP at 227. The court also found that:

> From the facts that Deputy Tjossem reasonably understood, there was more than one person inside the trailer. Where the [d]eputy was standing outside the trailer all he could see was [] Martin. Given the entry way into the trailer was small enough that the ability of Mr. Martin to grab a weapon which at the time was unseen by the [d]eputy, is always an issue in these types of cases.

CP at 222. Once backup arrived, Deputy Tjossem removed Martin without incident, and then removed the others and secured the trailer.

Based on the record, substantial evidence supports the findings of fact and the findings support the conclusion of law that Deputy Tjossem initially entered Martin's trailer based on exigent circumstances. Deputy Tjossem had reasonably trustworthy information that Martin was involved in drug distribution and had access to firearms. Deputy Tjossem knew Martin was on the premises because he saw and recognized him. Deputy Tjossem needed to secure Martin and any drugs and firearms Martin had, as authorized by the search warrant. Deputy Tjossem also needed to ensure that no one remained in the trailer who had access to a firearm or who could destroy evidence. Deputy Tjossem was concerned that others in the trailer were arming themselves. Deputy Tjossem's initial entry into the trailer was done peaceably, and he secured Martin without incident. There were specific and articulable facts to establish that the court correctly concluded that Deputy Tjossem's intrusion into the trailer was justified by exigent circumstances.

Thus, we hold that Deputy Tjossem's entry into the trailer was justified due to exigent circumstances.

9

## III.  SAG

In his SAG, Martin argues that Sergeant Schneider violated his constitutional right to privacy when he entered the trailer prior to receiving the second search warrant.

A SAG must adequately inform us of the nature and occurrence of alleged errors.  *State v. Calvin,* 176 Wn. App. 1, 26, 316 P.3d 496 (2013).  We consider only arguments not already adequately addressed as raised by the defendant's appellate counsel.  *State v. Thompson,* 169 Wn. App. 436, 493, 290 P.3d 996 (2012).  Martin's SAG argument has already been raised and thoroughly addressed in his appellate brief.  Accordingly, we decline to address his SAG argument.

## CONCLUSION

We affirm Martin's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
SUTTON, A.C.J.

We concur:

_____
MAXA, J.

_____
CRUSER, J.